## 39524. LEGARE v. THE STATE.

HILL, Chief Justice.

Andrew Philip Legare was tried and convicted in Baldwin County Superior Court on charges of armed robbery, burglary and malice murder; he was sentenced to life for the armed robbery, 20 years for the burglary and death for the murder. The convictions and sentences were affirmed by this court. *Legare v. State,* 243 Ga. 744 (257 SE2d 247), cert. denied, 444 U. S. 984 (1979). Legare then brought a petition for habeas corpus in the Superior Court of Butts County. That court denied relief, and Legare's application for a certificate of probable cause to appeal the denial of habeas corpus was denied by this court.

Legare's subsequent petition for writ of certiorari was granted by the United States Supreme Court in an order vacating the judgment and remanding the case to this court for further consideration in light of Eddings v. Oklahoma, 455 U. S. 104 (102 SC 869, 71 LE2d 1) (1982). Eddings holds that, in a procedure established to determine whether to impose the death penalty, the state must allow consideration of any relevant mitigating evidence, including the defendant's youthful age at the time of the offense, and his turbulent family history.[1] Pursuant to the United States Supreme Court's order, this court entered an order granting Legare's application to appeal the denial of the writ of habeas corpus, directing the habeas court to set aside the sentence of death, and directing the convicting court to impose a life sentence or conduct another sentencing trial.

Pursuant to the remand order from this court, a resentencing trial was held and Legare was again sentenced to death. He brings this appeal.

1. Legare's first enumeration is that the trial court erred in

---

[1] Legare was 17 at the time of the offenses for which he was convicted.

giving the jury an "Allen" charge.[2] The record shows that the trial court called the jury in and asked for a numerical breakdown on how they stood. The foreman responded that they were divided ten and two. The trial court then gave the following charge: "Ladies and gentlemen of the Jury, I would like to give you the following additional instruction. You have now been deliberating upon this case not necessarily for a very long time, considering that we've been to lunch. You've been out approximately four hours or maybe just less than four hours. And the Court deems it proper to advise you further in regard to the desirability of agreement if possible. The case has been exhaustively and carefully tried by both sides, the State and the Defendant, and has been submitted to you for decision and verdict if possible and not for disagreement. It is the law that a unanimous verdict is required and while this verdict must be the conclusion of each Juror and not a mere acquiescence of the Jurors in order to reach an agreement it is still necessary for all of the Jurors to examine the issues and questions submitted to them with candor and fairness and with a proper regard for and deference to the opinion of each other. A proper regard for the judgment of others will greatly aid us in forming our own judgment.

"This case must be decided by some Jury selected in the same manner this Jury was selected and there is no reason to think a Jury better qualified than you will ever be chosen. Each Juror should listen to the arguments of other Jurors with a disposition to be convinced by them and if the members of the Jury differ in their views of the evidence presented by the State and by the Defendant, such difference of opinion should cause them all to scrutinize the evidence more closely and to reexamine the grounds of their opinion. . . ."

We recognize, of course, that a charge similar to that given by the trial court here was approved in *Spaulding v. State,* 232 Ga. 411 (4) (207 SE2d 43) (1974). But in *Spaulding* the charge was given during the jury's deliberations on the guilt or innocence of the defendant. In those circumstances, the charge is a correct statement of the law and is not constitutionally infirm.

But we deal here with the sentencing phase of a death penalty trial and in that context the charge is simply not a correct statement of the law. While it is true that any "verdict" rendered must be unanimous and thus also true, stated in isolation, that it is "the law that a unanimous verdict is required," the statement that "This case must be decided by some Jury" is not a correct statement of the law in

---

[2] For the reason such charges are called "Allen charges," see *Anderson v. State,* 247 Ga. 397, 400 (276 SE2d 603) (1981).

the context in which it was made here. The import of this charge was that if this jury did not render a unanimous verdict, another jury would have to be empanelled and another sentencing trial held. That is not the law in death penalty cases. Rather, our death penalty statute provides that if the jury considering the death penalty cannot reach unanimity as to whether to recommend life or death, the court shall sentence the defendant to life imprisonment, and no retrial is permissible. OCGA § 17-10-31 (Code Ann. § 26-3102); *Hill v. State,* 250 Ga. 821 (301 SE2d 269) (1983); *Miller v. State,* 237 Ga. 557 (229 SE2d 376) (1976).

The state argues that *Miller* is inapplicable here, because *Miller* involved a hung jury and the jury in the case before us reached a verdict after several more hours of deliberation. This difference is immaterial; the giving of this Allen charge to a jury considering the death penalty is an incorrect statement of the law set forth in OCGA § 17-10-31 (Code Ann. § 26-3102), supra. While the trial court is not required to instruct the jury that lack of unanimity forecloses imposition of the death penalty it is error to give the jury a charge that is contrary to this rule of law. We necessarily find that the charge as given constitutes reversible error.

The next question for consideration is whether, as is usual, an erroneous charge results in a new trial, or whether, by sending this case back for retrial this court in effect authorizes and says what the trial court erroneously instructed the jury, to wit: "This case must be decided by some Jury selected in the same manner as this Jury was selected. . . ." That is to ask, did the trial court's erroneous instruction so infect the process that a new trial is not permissible under these particular circumstances? In other words, is a hung jury to be presumed from the giving of an Allen charge? We cannot say with assurance that this jury would have reached the verdict it did without the erroneous charge; nor can we say with assurance that the jury would not have reached a verdict.

Where the sentencing authority does not consider mitigating circumstances, a new trial (where the sentencing authority considers mitigating circumstances) is permissible. Eddings v. Oklahoma, supra, 455 U. S. at 117, remanded for consideration of mitigating evidence. There is no presumption that the sentencing authority, if it had considered mitigating circumstances, would have imposed a life sentence. We conclude that, since this jury did reach a verdict, we should not presume that, absent the Allen charge, they would not have reached a verdict. We therefore apply the usual rule that an error in charge results in a new trial.

2. Legare also complains of a charge that the trial court did give, over his objection, to wit: "[T]he law does not permit Jurors in

arriving at their verdict to be governed by sympathy or prejudice. You may not and should not, therefore, render a verdict in this case upon sympathy for either party or prejudice against either party. Any verdict you return must be supported by evidence produced upon the trial, or inferences which could be reasonably drawn therefrom without in any way being affected by either sympathy or prejudice." While this charge would not be incorrect were it limited to "prejudice," see OCGA § 17-10-35 (c) (1) (Code Ann. § 27-2537), we are constrained to conclude that the charge as given might confuse the jury as to their option to recommend mercy.

The trial judge did charge the jury fully on mitigating circumstances; for example, he charged the jury that they were authorized to consider the circumstances and facts in mitigation, and that "mitigating circumstances are those which do not constitute a justification or excuse for the offense of murder, but which in fairness and mercy may be considered as extenuating or reducing the degree of moral culpability or blame of the Defendant, or otherwise offering a basis for not imposing the death penalty." This charge is consonant with the decisions of the United States Supreme Court. For example, in Jurek v. Texas, 428 U. S. 262, 271 (96 SC 2950, 49 LE2d 929) (1976), the Court held: "A jury must be allowed to consider on the basis of all relevant evidence not only why a death sentence should be imposed, but also why it should not be imposed." The Court reiterated that holding in Lockett v. Ohio, 438 U. S. 586, 604 (98 SC 2954, 57 LE2d 973) (1978), stating that "the Eighth and Fourteenth Amendments require that the sentencer . . . not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death."

Thus this jury was charged to consider in mitigation all circumstances which in fairness or mercy offer a basis for not imposing the death penalty, a charge the substance of which is constitutionally required. But the jury was also charged not to base their verdict on sympathy for the defendant. Since the evidence in mitigation might well evoke sympathy, we find these charges in irreconcilable conflict. Because the charge complained of might well confuse the jury and limit their constitutionally required consideration of evidence in mitigation, we hereby disapprove it.

In view of our determination in Division One, we need not consider the state's argument that considering the court's charge as a whole, the jury could not have been misled by the charge instructing the jury not to base its decision on sympathy.

3. Moreover, in view of our determination in Division One, we need not consider defendant's enumeration of error regarding the

striking of certain jurors for objection to the death penalty. In this connection, however, see *Lewis v. State,* 246 Ga. 101 (2) (268 SE2d 915) (1980); *Blankenship v. State,* 247 Ga. 590 (4) (277 SE2d 505) (1981); *Allen v. State,* 248 Ga. 676 (2) (286 SE2d 3) (1982); Hance v. Zant, 696 F2d 940, 954 (11th Cir. 1983).

4. Defendant urges that imposition of the death penalty upon a person who was under the age of 18 at the time of the offense constitutes cruel and unusual punishment under the Eighth Amendment.

He correctly points out that the 1982 Code, OCGA § 17-9-3 (Code Ann. § 27-2302), provides that the death penalty shall not be imposed upon persons who were under 17 at the time of commission of the offense.[3] Since the defendant was 17 at the time of the offense, his sentence to death does not violate this provision.

He urges that this court should reach the issue which the United States Supreme Court did not reach, at least expressly, in Eddings v. Oklahoma, supra, 455 U. S. at 110, fn. 5. Because of our determination in Division One, we do not decide this constitutional issue. Compare Eddings v. Oklahoma, supra. Similarly, we do not now make a proportionality review of youthful age cases.

5. We find it unnecessary to address the remaining enumerations of error.

*Judgment reversed. All the Justices concur.*

DECIDED APRIL 27, 1983.

*Sutherland, Asbill & Brennan, John H. Fleming, Roy R. Kelly III, John Lee Parrott,* for appellant.

*Joseph H. Briley, District Attorney, Michael J. Bowers, Attorney General, William B. Hill, Jr., Assistant Attorney General,* for appellee.

---

[3] OCGA § 17-9-3 (Code Ann. § 27-2302) provides in pertinent part: "When it is shown that a person convicted of a capital offense without a recommendation for mercy had not reached his seventeenth birthday at the time of the commission of the offense, the punishment of such person shall not be death but shall be imprisonment for life."