A96A1496. TERRY v. THE STATE.
(480 SE2d 193)

</div>

ANDREWS, Judge.

Charles Everette Terry appeals from his conviction of one count of armed robbery. We find no harmful error and affirm.

1. Terry first contests the sufficiency of the evidence. Viewing the

evidence with all inferences in favor of the jury's verdict, it was that Atlanta City Councilman James Maddox, Sr. had finished grocery shopping around 9:00 p.m. on November 6, 1993 and was wheeling his buggy to his car when he noticed two men walking and talking in the lighted parking lot. As Maddox was loading his groceries into his car from his buggy which was propping open the car door, he was jumped from behind and "some kind of a metal or something hit me up side the head real hard." The object was very hard and cold and Maddox said it seemed like a piece of metal to him. As Maddox fell, the buggy had fallen to the side and was near the rear wheel of the car. As Maddox was lying on his side in the parking lot, the two men began taking his wallet, watch, and ring. As they were doing so, Maddox was attempting to "see who it was that was attacking me" without making eye contact with them. His ring was difficult to get off his finger and he had this period during which to view the men. The men took over $600 in cash in addition to his jewelry and wallet.

A cashier getting off work saw the attack and ran into the store to get the security guard, an off-duty Fulton County sheriff's deputy. As Deputy Smith exited the store, she saw a male walking fast away from the area indicated by the cashier. When she ordered the man to halt, he ran and she pulled her weapon on him. She saw that the man had "something black in his right hand." She briefly lost sight of him before placing him under arrest. The item which she saw in the man's hand was not recovered but was "consistent with" a black handgun.

Councilman Maddox came up and identified the arrested man, Starling, as one of the men who robbed him. The right side of Maddox' face was swollen and purple and blood was coming out of the back of his neck. According to Deputy Smith, the wound she observed was "consistent with [Maddox] being hit with some kind of object." Maddox' wallet and ring were found on Starling but the cash and watch were not recovered.

Starling pled guilty to the robbery and testified against Terry. Starling had grown up with Terry, although, prior to this incident he said he had not seen Terry since 1986 because he, Starling, had been in prison. Starling saw Terry hanging out at a store near Perry Homes around 7:30 p.m. and the two of them drank a six pack of beer, two pints of wine, and smoked a couple of joints of marijuana. Starling took Terry to Greenbrier Mall and then they went to use the pay phone near the grocery store. Starling used the pay phone and Terry stood there with him. According to Starling's trial testimony, he was the one who grabbed Maddox, Terry was just there with him and "wasn't doing nothing." Starling said Terry went into Maddox' pocket, got the cash, and took Maddox' watch. Because Starling was trying to get Maddox' ring off, Terry had walked away before the

security guard arrived.

Maddox identified Terry as the second man who robbed him.

(a) Terry contends there was insufficient corroboration of his accomplice's testimony.

" '[T]he rule that a felony conviction is not to be had on the uncorroborated testimony of an accomplice applies only when the accomplice is the *sole* witness upon whose testimony the [S]tate relies. (Cits.)' (Emphasis in original.) *McDaniel v. State*, 158 Ga. App. 320 (279 SE2d 762) (1981). In the instant case, the State introduced evidence *other* than the testimony of [Terry's accomplice], including evidence of the victim's pre-trial identification of [Terry] as one of his attackers." *Morris v. State*, 204 Ga. App. 437, 438 (2) (419 SE2d 733) (1992).

Slight evidence of a defendant's identity and participation from an extraneous source is all that is needed to corroborate the accomplice's testimony. *Earl v. State*, 214 Ga. App. 891, 892 (1) (449 SE2d 361) (1994). There was sufficient corroboration here.

(b) Secondly, Terry argues that the evidence was insufficient because there was not proof that a weapon was used in the robbery.

"The presence of an offensive weapon or the appearance of such may be established by circumstantial evidence, and a conviction for armed robbery may be sustained even though the weapon was neither seen nor accurately described by the victim. Some physical manifestation is required or some evidence from which the presence of a weapon may be inferred, [cit.], but OCGA § 16-8-41 (a) does not require proof of an actual offensive weapon." *McCluskey v. State*, 211 Ga. App. 205, 207 (2) (438 SE2d 679) (1993).

Here, in addition to Maddox' testimony that he was struck with a metal object, there was the testimony of the trained law enforcement officer that she saw a black object in Starling's hand which was consistent with a black gun. Also, the evidence of Maddox' extensive injuries was circumstantial evidence to support the State's contention that Maddox was clubbed with a gun.

It was for the jury to evaluate Terry's claim that Maddox' injuries were caused by him striking his head on his cart as he fell. OCGA § 24-9-80.

The evidence was legally sufficient. *McRae v. State*, 221 Ga. App. 414 (471 SE2d 532) (1996); *Alford v. State*, 200 Ga. App. 483 (408 SE2d 497) (1991); *Hughes v. State*, 185 Ga. App. 40, 41 (363 SE2d 336) (1987).

2. The second enumeration is that the court erred in allowing Dr. McKee, a forensic psychiatrist who examined Terry pursuant to his notice of intent to raise an insanity/mental incompetency defense, to testify that Terry had an antisocial personality disorder, including repeated conflicts with the law, because that testimony improperly

160

placed his character in issue.

We need not consider the merits of this enumeration, however, since no objection to this testimony was made below. " ' "Reversal of the trial court is not authorized on the basis of an evidentiary ruling that the trial court was never called upon to make." (Cit.) Likewise, in the absence of a specific objection below, it was waived.' *Lewis v. State,* 208 Ga. App. 656, 658 (1) (431 SE2d 445) (1993)." *Allison v. State,* 217 Ga. App. 580, 582 (459 SE2d 557) (1995).[1]

3. Terry's sixth enumeration is that the court erred in allowing Maddox' in-court identification of Terry after an impermissibly suggestive pretrial "showup," based on *State v. Frye,* 205 Ga. App. 508 (2) (422 SE2d 915) (1992). A number of factors defeat this argument.

Initially, there was no evidence of a police initiated "showup." See *Baines v. State,* 201 Ga. App. 354 (411 SE2d 95) (1991). Instead, the evidence was that Maddox attended the preliminary hearing scheduled for Starling and Terry. Maddox testified that he was not aware that the second person who attacked him was about to enter the courtroom, but, when he saw Terry, he recognized him as the second robber. There was no evidence suggesting in any way that the events described were anything other than a chance viewing, that Terry and Starling were the only persons in the courtroom with Maddox, or that Terry was identified by the State to Maddox prior to Maddox' independently recognizing him. Compare *Frye,* supra.

There was no error. *Daniels v. State,* 252 Ga. 30, 31 (1) (310 SE2d 904) (1984); *Anderson v. State,* 206 Ga. App. 354 (1) (426 SE2d 6) (1992); *Wilson v. State,* 181 Ga. App. 435 (1) (352 SE2d 618) (1987).

4. In his fourth enumeration, Terry contends the trial court erred in "failing to answer and properly instruct the jury" after the jurors asked if the indictment could be "changed to Robbery instead of Armed Robbery."

Upon the question being presented, the court inquired of defense counsel if she desired a charge on the lesser included offense of robbery by intimidation. While the State had no objection to a charge on the lesser included crime, defense counsel responded that her trial strategy was based on "all or nothing" because Terry claimed he was not present and presented an alibi defense. Counsel objected to the court's proposed charge on the lesser included offense. In response, the court directed the deputy to tell the jury "this is not the kind of question I can answer."

---

[1] Even had an objection been made, however, and improperly overruled, we note that the evidence of Terry's guilt was such that it is highly probable that the error did not contribute to the verdict. Compare *Sanders v. State,* 251 Ga. 70, 76 (3) (303 SE2d 13) (1983), and *Cornelius v. State,* 213 Ga. App. 766, 772 (6) (445 SE2d 800) (1994), with *Penson v. State,* 222 Ga. App. 253, 255 (1) (474 SE2d 104) (1996).

Terry's argument here is that the question showed that the jury was confused and the court erred in failing to clear that confusion up. That is not, however, what the question evidenced. It showed that the jury understood the elements of armed robbery and desired to consider the lesser included charge. In light of the defense's objections, the court did not abuse its discretion in not sua sponte charging on the lesser included offense. *Patterson v. State*, 264 Ga. 593, 594 (2) (449 SE2d 97) (1994); *Miller v. State*, 221 Ga. App. 718, 719 (472 SE2d 697) (1996).

5. The fifth enumeration is that the court erred in accepting the jury's verdict when the first juror polled stated that "we never did come to a conclusion about this Armed Robbery thing because everybody said it should have been robbery instead of armed robbery." The exchange between the court and the juror following this remark was: "Q. Sir, my question is did you agree with the verdict? A. Yes, I did, absolutely. Q. And did you agree with it and you still agree with it? A. Yes." The remaining jurors all answered the questions affirmatively without equivocation or question.

There was no error in the court's accepting the verdict after the poll. " 'The indication of "reservations" does not prevent the verdict from being unanimous. The requirement is that a juror agree to a verdict. . . . [T]he juror(s) . . . answered affirmatively that the verdict was (theirs) in the jury room and still (theirs) upon being polled.' [Cit.]" *Rouse v. State*, 265 Ga. 32, 34 (453 SE2d 30) (1995).

Terry's speculation that this exchange indicates that the jury proceeded on the erroneous assumption that they could find him guilty of armed robbery if they felt the evidence only showed he was guilty of robbery is not meritorious. "[Q]ualified jurors, under oath, are presumed in the absence of clear contrary evidence to follow the procedural directives of and to respond honestly to the questions of the trial judge. [Cit.]" *Garcia v. State*, 207 Ga. App. 653, 658 (2) (b) (428 SE2d 666) (1993). See *Larry v. State*, 266 Ga. 284, 287 (466 SE2d 850) (1996); *Kimmel v. State*, 261 Ga. 332, 335 (4) (404 SE2d 436) (1991).

6. Enumerations 3, 7, and 8 all deal with contentions regarding ineffective assistance of counsel and will be addressed together.

The bases for the claimed ineffective assistance are that trial counsel erred by not objecting to Dr. McKee's testimony; by failing to make an ex parte motion for an independent psychiatrist to examine Terry; and by using the State psychiatrist to do the examination and then allowing the release of that evaluation to the State.

"A trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless that finding is clearly erroneous. [Cit.]" *Garrett v. State*, 196 Ga. App. 872, 874 (1) (397 SE2d 205) (1990); see also *Hayes v. State*, 211 Ga. App. 801, 802

(1) (440 SE2d 539) (1994). A conviction will not be reversed on the basis of ineffective assistance of counsel unless "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Carter v. State*, 176 Ga. App. 632, 633 (337 SE2d 413) (1985), quoting from *Strickland v. Washington*, 466 U. S. 668, 669 (104 SC 2052, 80 LE2d 674) (1984).

(a) At the motion for new trial hearing, trial counsel testified regarding her failure to object to Dr. McKee's testimony, that "it was unexpected, caught me off guard. I did not have the available case law at the time so I did not raise an objection at the time, but I believe I should have." Even assuming, however, that this failure evidences ineffectiveness, we conclude that the error was harmless beyond a reasonable doubt for it is highly probable that the error did not contribute to the verdict of guilty. *Stanley v. State*, 222 Ga. App. 750, 751 (476 SE2d 58) (1996); *Miller v. State*, 160 Ga. App. 832 (3) (287 SE2d 679) (1982). Here, in addition to Dr. McKee's testimony concerning Terry's organic brain disorder, antisocial personality disorder and alcohol and drug abuse, Terry introduced evidence from his sister that he had been shot in 1986 and been in a coma for three months. As a result, he suffered seizures and was on SSI for disability.

Terry's defense was alibi, that he had nothing to do with the incident because he was with his sister the evening it occurred. There was no harmful error as required by *Strickland v. Washington*, supra.

(b) Terry also complains of trial counsel's failure to request an independent psychiatric examination of him and of the release of Dr. McKee's examination to the State.

Trial counsel testified that, after the examinations were performed by Grady Hospital and Georgia Regional Hospital doctors, she made a tactical decision to withdraw the insanity/diminished capacity defense and to rely on the alibi defense.

Such a tactical decision does not equate with ineffective assistance of counsel. *Hammond v. State*, 264 Ga. 879, 882 (4) (452 SE2d 745) (1995); *Riser v. State*, 222 Ga. App. 348, 349 (474 SE2d 632) (1996); *Williams v. State*, 218 Ga. App. 785, 788 (3) (463 SE2d 372) (1995).

Regarding the release of the reports to the State, Terry has made no showing that such release was requested by or even acquiesced in by his trial counsel and has not supported his claim of ineffective assistance on this ground. See *Callaway v. State*, 208 Ga. App. 508 (1) (431 SE2d 143) (1993).

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED DECEMBER 4, 1996 —
RECONSIDERATION DENIED DECEMBER 20, 1996 — 

*Jana M. Whaley*, for appellant.
*Lewis R. Slaton, District Attorney, Juliette O. W. Scales, Assistant District Attorney*, for appellee.